FRANK A. ACHILLE and ELIZABETH N. ACHILLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Achille v. Commissioner
Docket Nos. 399-78, 400-78.
United States Tax Court
T.C. Memo 1979-268; 1979 Tax Ct. Memo LEXIS 250; 38 T.C.M. (CCH) 1056; T.C.M. (RIA) 79268; July 23, 1979, Filed *251 Frank A. Achille, pro se. Milton B. Blouke, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: Respondent determined deficiencies in the income tax of petitioners in the following amounts: Dkt No.
Petitioner
Year
Deficiency
400-78
Frank A. Achille and
1974
$ 1,236.75
Elizabeth N. Achille
399-78
Frank A. Achille
1975
1,444.75
399-78
Elizabeth N. Achille
1975
1,485.25
$ 4,166.75
The questions presented for decision are (1) whether under section 105 [1] petitioners are entitled to exclude from income any portion of the retirement pay received by Frank A. Achille from the Navy in 1974 and 1975; and (2) whether petitioners are entitled to an investment tax credit of $834 and the deduction of a "rental loss" of $2,575 for the taxable year 1975 on account of the loan of funds to purchase certain dental equipment. The medical expense deduction will be adjusted in accordance with this decision. All of the facts have been stipulated and are so found. The stipulation of facts together with exhibits *252 attached thereto are incorporated herein by this reference. The petitioners Frank A. Achille and Elizabeth N. Achille filed a joint income tax return for the taxable year 1974 and separately filed individual income tax returns for the taxable year 1975. During such years, and at the time of filing the petitions herein, the petitioners resided in Los Altos, California. In 1967, Frank A. Achille retired from the United States Navy after 31 years of service. In 1971, he received a 40 percent disability rating from the Veterans' Administration. In September 1974, the rating was increased to 70 percent retroactively to January 1, 1974. Pursuant to this procedure, he was paid a disability benefit by the Veterans' Administration and his retirement benefit from the Navy was reduced dollar for dollar. During the taxable year 1974, Frank A. Achille received $8,233.30 in retirement benefits from the Navy. In addition, he was employed by Pan American Airways and earned $16,587.42. In the joint return filed by the petitioners there was claimed an exclusion of $5,200 computed at the rate of $20 per day multiplied by 260 days on the basis that Frank A. Achille was employed by the Navy *253 and was absent from work on such days. During the taxable year 1975, Frank A. Achille received $8,384.00 in retirement benefits from the Navy. In addition, he was employed by Pan American Airways and earned $17,160.21. For the taxable year 1975, petitioners filed separate returns. Under the community property laws of California, each petitioner reported one-half of the earnings and/or retirement pay received by Frank A. Achille. Each claimed one-half of an exclusion on account of "sick pay" received by him from the Navy computed at the rate of $20 per day for 260 days, making a total of $5,200. Respondent has determined that the pay received by Frank A. Achille from the Navy was predicated on longevity and is not subject to exclusion. In this respect, respondent's determination must be sustained on the authority of Cleary v. Commissioner,60 T.C. 133 (1973). In the Cleary case, the taxpayer retired from the U.S. Army on September 30, 1967, on his own application, solely on the basis of having completed more than 22 years of service. He received retirement pay effective October 1, 1967. At the same time, the taxpayer submitted a claim for disability *254 to the Veterans' Administration. Ultimately, by notice dated January 20, 1970, the taxpayer was awarded a 20 percent service-connected disability. He waived a portion of his retirement pay equal to the disability compensation he received. His retirement was first reduced and his disability compensation first paid by the Veterans' Administration for the month of April 1970. In his 1969 income tax return, the taxpayer sought to exclude both the proportion of his retired pay which was covered by the disability allowance and a sick pay exclusion based on the claim that he was absent from work from January 1, 1969, to December 31, 1969. In denying the taxpayer's right to an exclusion under either section 104(a)(4) or section 105 this Court said: First, the amounts which petitioner received from the Army after he retired were not "wages or payments in lieu of wages" paid pursuant to an "accident or health insurance [plan]" within the meaning of section 105(a) and (d). See secs. 1.105-4(a)(2)(i) and 1.105-5(a), Income Tax Regs.Such amounts were statutory retirement pay, based on petitioner's prior service in the Army. Second, the payments were not for a period during which petitioner *255 was "absent from work on account of personal injuries or sickness." We have noted that petitioner expressly disclaims any contention that his ailments on September 30, 1967, entitled him to Army disability retirement pay. In no sense therefore did he receive the Army retirement pay due to personal injury or sickness. Sec. 1.105-4(a)(2)(ii), Income Tax Regs.
The plain facts are that petitioner was an officer on active duty in the Army until September 30, 1967, when he retired. He was not incapacitated. Nor was his retirement "forced by illness or sickness." Cf. Brooks v. United States, 473 F. 2d 829, 831 (C.A. 6, 1973). To the contrary, petitioner was retired on the ground of longevity, and he received retirement pay computed solely on the basis of the number of his years of Army service. After he retired, he took another job. Petitioner's income tax return for 1969 shows that in addition to his Army retirement pay, he earned a salary -- which was evidently greater than his retirement pay -- as a research technician at the Human Resources Research Organization at Ft. Benning, Ga. He has not shown that he was absent from work on account of personal injuries or sickness *256 at any time in either 1967 or 1969, and we do not think section 105 permits us to indulge in the fiction that he was. Petitioner is not entitled to exclude any portion of his retirement pay received from the Navy during the taxable years 1974 and 1975. During the taxable year 1975, petitioners made a loan to National Charter Management and Financial Services (National) in the sum of $12,500 which the borrower applied to the purchase of certain dental equipment from a Dr. Knudson.The borrower then leased the equipment back to Dr. Knudson under its standard equipment lease. The lease was thereupon assigned as collateral to secure the indebtedness. Petitioners claimed an investment credit on account of the purchase of such equipment as a noncorporate lessor under section 46(e)(3) and claimed depreciation on account thereof under section 167(a), including a claim for the first year depreciation under section 179, resulting in a "rental loss" of $2,575. The form of the transaction between petitioners and National was clearly no more than a loan. Petitioners received a note and were paid interest thereon in accordance with its terms. The note stated specifically "that these funds *257 will be used in the leasing of equipment. AND for this promise, an assignment of a lease will be made to provide collateral security for the loan." The assignment of the equipment lease to the petitioner stated: THE ASSIGNMENT is made as security for all indebtedness, obligations and liabilities of the undersigned to set bank or lender, now or hereinafter existing, matured, absolute or contingent and howsoever created, evidenced or secured. ALL PROCEEDS, received by said bank or lender by virtue of said assignment will be applied by said bank or lender upon the indebtedness, obligations and liabilities secured by the assignment. IT IS AGREED that the bank or lender shall not be obligated and shall not be liable to collect, realize upon and obtain payment of the accounts, rights and demands assigned to it. Any and all sums which the undersigned may receive from, on, or on account of said accounts, rights and demands will be promptly paid over to the bank or lender by the undersigned only in such amounts as agreed upon by and between the assignee and assignor to amortize the indebtedness. So long as the debtor paid interest on the note in accordance with its terms, petitioners *258 could acquire no interest in the collateral securing such note. Since the petitioners did not have an interest in the collateral itself, petitioners were not entitled to either the investment credit or depreciation with respect to the leased property. Decision will be entered under Rule 155 in docket no. 399-78 in order to reflect certain concessions made by the respondent.
Decision will be entered for the respondent in docket no. 400-78.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩